# Commonwealth of Pennsylvania *v.* People's Traction Co. of Philadelphia, Appellant.

*Taxation—Corporations—Tax on capital stock.*

The acts imposing a tax on the capital stock of certain corporations for state purposes require the stock to be appraised at its actual value in cash, " not less, however, than the average price which said stock sold for during said year." Where the " average price " was ascertained by multiplying the number of shares sold at each sale by the price paid per share, adding together the amounts paid at all the sales and dividing this sum by the number of shares sold, it was *held* not to be an erroneous method of ascertaining the average price for the year.

*Taxation— Corporations — Tax on capital stock — Shares distributed to stockholders at less than their actual value.*

Shares of stock distributed to stockholders during the tax year at less than their actual value in cash must be appraised, not at the price at which they were distributed, but at their actual value ascertained as above stated, and must be taxed for the proportion of the tax year remaining at the date of distribution.

*Taxation—Corporations—Appraisement of shares in which only part has been paid.*

There having been no sales during the year of certain shares on which only part of the par value had been paid in, and no evidence as to their value, it is equitable to appraise them at the amount paid in.

Argued May 31, 1897.   Appeal, No. 25, May T., 1897, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1896, No. 619, on trial by the court without a jury.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Appeal from tax settlement.

SIMONTON, P. J., filed the following opinion :

This is an appeal from a settlement made by the auditor general and state treasurer, April 26, 1896, against the corporation defendant, for tax on capital stock for the tax year 1894.   It was tried by the court without a jury, as provided by the act of April 22, 1874, and on the testimony and documentary evidence we find the following facts :

1.  The defendant is a corporation of the state of Pennsylvania,

incorporated March 6, 1893.   Prior to the beginning of the tax year 1894 it had issued 160,000 shares of capital stock of the par value of $50.00 each, on which part of the par value had been paid, leaving them subject to calls for the balance due.   At various times during the tax year additional amounts were paid in on 159,153 of these shares until $25.00 in all had been paid on each share.   No more than $6.25 per share has ever been paid on the remaining 847 shares.   On September 13, 1894, defendant issued to its stockholders, in proportion to their ownership of shares at that date, 39,910 additional shares of the par value of $50.00 each, on which the stockholders paid in $25.00 per share, receiving certificates showing that the shares were subject to calls for the additional $25.00.

2. In December, 1894, defendant's president and treasurer, having first taken the oath prescribed by law, made a report to the auditor general, which stated, inter alia, that defendant's total authorized capital stock was $10,000,000, divided into 200,000 shares of the par value of $50.00 each, and that 199,910 shares had been issued, on 199,063 of which $25.00 each had been paid, and on the remaining 847 shares $6.25 each.   They also reported that the amount of capital so paid in, which was taxable for the tax year 1894, was $3,113,667.97.   That the gross earnings during the year were $247,813.89, all of which had been expended in payment of rents, salaries, necessary repairs and interest accrued during the year, leaving no net earnings; and that the average price of sales of stock during the year was $41.37½, and that defendant owned shares of stock in other corporations, which paid the tax upon their respective capital stocks, $4,992,827 ; and they accompanied this report with an appraisement in which they stated as follows : " We have estimated and appraised the average capital stock of said company at its actual value in cash as follows, viz :         shares at       dollars and    cents per share, amounting in the whole to $5,150,953.35."

3. This appraisement was not made by estimating the shares which had been issued at their actual value in cash, but assuming that shares on which $25.00 had been paid were shown by the average price at which they had sold for during the year to be worth $41.37½, the amount of the appraisement was fixed at a sum which bore the same proportion to $3,113,667.97—which

was assumed to be the average amount taxable during the year
—that $41.37½ bears to $25.00, the amount thus arrived at be-
ing $5,150,953.35.

4. The auditor general accepted this report and appraisement
and settled an account June 18, 1895, for tax thereon, deduct-
ing the value of the shares of the capital stock of other corpora-
tions upon which the taxes were paid by those corporations,
and charged defendant with a tax at the rate of five mills on
$158,126.35, amounting to $790.63, which was paid by defend-
ant.

5. Afterwards, on April 26, 1896, believing that the former
account was settled on an erroneous basis owing to the wrong
principle on which the report and appraisement had been made,
the auditor general resettled the account against defendant,
charging it with a tax on 199,063 shares at the rate of $56.75
per share, that being the highest price of sales of stock be-
tween the 1st and 15th days of November, 1894, amounting to
$11,296,825, and on 847 shares at $50.00 per share, amounting
to $42,350, the total being $11,339,175, which, after there was
deducted therefrom $4,992,827, the value of shares of other
companies, left taxable $6,346,348, the tax upon which at the
rate of five mills amounting to $31,731.74, upon which defend-
ant was entitled to a credit of $790.63, for tax already paid,
which the auditor general no doubt inadvertently failed to allow.
And from this settlement the appeal now before us was taken.

6. The testimony produced at the trial, includes a certificate
of certain computations made by agreement of the parties by an
officer of the Commonwealth Guarantee, Trust and Safe Deposit
Company, of Harrisburg, which states, inter alia, " If the aver-
age is to be obtained by multiplying the number of shares sold
in each transaction, by the price of said transaction, adding
together the number of shares and also the total proceeds of all
the sales at the exchange, the result thus obtained shows the
total number of shares sold from November 6, 1893, to Novem-
ber 3, 1894, to have been 325,442, and the aggregate of all sales
at the stock exchange to have been $16,441,114.27. This ag-
gregate, divided by the number of shares sold, shows a result of
$50.52 per share." There were, as we already show, 39,910
shares distributed by the company to its shareholders at $25.00
per share, but as this was a distribution and not a sale, and as

the evidence shows that the shares at the time this distribution was made were of much greater value than $25.00 each, we do not think these ought to enter into the computation, and we therefore find that the value of each share between the 1st and 15th of November, 1894, was $50.52.

We think the report and appraisement made by defendant's president and treasurer was made on a wrong basis and resulted in an incorrect settlement by the accounting officers. After reporting the number of shares of stock issued, if all were not issued before the beginning of the tax year; and an apportionment of the tax was asked for on this account, the report should have shown the date during the year when the additional shares were issued. This it did not do, but instead it gave the dates when the several instalments upon the shares were paid during the year, which was of no consequence, as whatever influence this could have upon the appraisement was involved in the selling price of the shares from time to time from which the average price during the year was obtained. And in making the appraisement the president and treasurer did not appraise the stock at so much per share, but appraised the average amount of the money paid in. This was incorrect and misleading, and the settlement made on the basis of this appraisement did injustice to the commonwealth. The accounting officers were therefore well within the limit of their authority and duty in resettling the account, as this was done within a year from the date of the first settlement. But in this resettlement the tax should have been apportioned on the appraised value of the 39,910 shares for the portion of the tax year remaining at the date of its issue, and the appraised value of the shares should have been fixed at $50.52 per share, instead of $57.75. And as there were no sales of the 847 shares on which only $6.25 had been paid and no evidence was given of their value, we think it equitable to appraise them at that amount. We therefore reach the following:

CONCLUSIONS OF LAW.

1. The settlement made by the auditor general and state treasurer on June 17, 1895, was incorrect, and the amount of tax charged therein was much less than the amount justly due from defendant to the commonwealth.

2. The auditor general and state treasurer had full authority to make the resettlement of April 29, 1896, and said settlement is valid and binding on defendant, except as modified herein.

3. The commonwealth is entitled to recover from defendant a tax at the rate of five mills on the dollar of the actual value of its capital stock, as follows, viz: For the whole tax year 1894 on 159,153 shares at $50.52 per share; on 39,063 shares at the same rate per share for the proportion of the tax year remaining on September 13, 1894, when said shares were issued; and on 847 shares for the whole tax year at $6.25 per share; less $4,992,827 invested in shares of other corporations.

4. The prothonotary is directed to enter judgment in favor of the commonwealth and against the defendant for the amount of the tax which shall be found due when properly calculated upon the basis stated in the foregoing conclusion, if exceptions be not filed within the time limited by law.

Defendant's exceptions alleged that the court erred:

1. In not including in its sixth finding of fact the whole of the certificate of computations made, by agreement of the parties, by an officer of the Commonwealth Guarantee, Trust and Safe Deposit Company, of Harrisburg, which said certificate is as follows, viz:

"I hereby certify that, as requested, I have made certain computations from the sales of the capital stock of the People's Traction Company as said sales appear in a certain affidavit made by Charles O. Kruger, on the fifth day of December, 1896, in the case of the Commonwealth of Pennsylvania v. People's Traction Company, No. 619, Commonwealth Docket, 1896, in the Court of Common Pleas of Dauphin County, for the purpose of ascertaining the average price of said sales.

"Taking the sales at the Philadelphia Stock Exchange by themselves, if the average is to be determined by taking the highest sale and the lowest sale, adding the two together and dividing the result by two, the average thus obtained is $41.37½ per share.

"If the average is to be obtained by multiplying the number of shares sold in each transaction by the price of said transaction, adding together the number of shares and also the total proceeds of all the sales at the exchange, the result thus obtained shows the total number of shares sold from November 6, 1893,

to November 3, 1894, inclusive, to have been 325,422 shares, and the aggregate of all sales at the Stock Exchange to have been $16,441,114.27. This aggregate divided by the number of shares sold shows a result of $50.52 per share.

"If the average is to be ascertained by including not only the shares sold at the Philadelphia Stock Exchange, but also the 39,910 shares sold by the company itself at $25 per share, then the total of all the shares is 365,332 shares, and the aggregate price for which all said shares were sold $17,438,864.27. This aggregate divided by the number of shares sold shows a result of $47.73 per share. I believe the foregoing computations to be correct."

2. In that portion of its sixth finding which reads as follows:

"There were, as already shown, 39,910 shares distributed by the company to its shareholders at $25.00 per share, but as this was a distribution and not a sale, and as the evidence shows that the shares at the time this distribution was made were of much greater value than $25.00 each, we do not think these ought to enter into the computation, and we therefore find that the value of each share between the 1st and 15th of November, 1894, was $50.52."

The fact being, as shown by the undisputed testimony, that "the new shares issued by the company were not subscribed for, but were sold outright by the company at $25.00 per share, that being the par value of the amount paid in."

3. In not finding as a fact, which clearly appears from the undisputed testimony in the case, that:

"There was upon the stock exchange a good deal of speculation in this company's shares, as may readily be seen from the wide and violent fluctuations in price. Furthermore, the transactions upon the stock exchange represent many more thousand shares of stock than were actually transferred upon the books of the company during said year.

"The gross receipts of the company during the year were $247,813.89, while its expenses, including interest, amounted to $249,264.51. The company was incorporated March 6, 1893. It paid no dividends in either 1893 or 1894. The value of the stock depended to a large extent upon the future success of the company, and upon the success of the People's Passenger Railway Company, in whose shares the capital stock of the People's

Traction Company was largely invested.   There was nothing in the character of the property and assets of the business of either company up to that time to indicate intrinsic value in the capital stock of the People's Traction Company largely in excess of the amount which had been paid in upon each share, and no more than $25.00 had been paid in on any share."

4. In not taking into consideration the 39,910 shares of stock sold by the company at $25.00 per share.

5. In not finding the fact, as requested in No. 4 of defendant's request for findings of fact, that :

" During the tax year 1894 there was a great deal of speculation in defendant's shares, the transactions at the Philadelphia Stock Exchange aggregating 325,422 shares, or nearly twice as much as the entire capital stock of the company.   Taking the highest sale and the lowest sale, adding the two together, and dividing the result by two, the average thus obtained is $41.37½ per share for $25.00 paid shares."

6. In not finding the fact, as requested in No. 6 of defendant's request for findings of fact, that :

" The actual value in cash of defendant's capital stock, not less than the average price which said stock sold for during said year ending with the first Monday of November, 1894, did not exceed $41⅜ per share for $25.00 paid shares, or a premium of 65½ per cent."

7. In not taking into consideration under all the circumstances of the case, the 39,910 shares of stock sold by the company at $25.00 per share in determining the average price of sales of stock.

8. In not finding as a matter of law that under the facts of this case the proper method of determining the average sales of stock was by taking the highest and lowest sales during the year, and accepting the mean thereon as said average.

9. In its first conclusion of law :

" The settlement made by the auditor general and state treasurer on June 17, 1895, was incorrect, and the amount of tax charged therein was much less than the amount justly due from defendant to the commonwealth."

10. In its second conclusion of law :

" The auditor general and state treasurer had full authority

to make the resettlement of April 29, 1896, and said settlement is valid and binding on defendant, except as modified herein."

11. In its third conclusion of law:

"The commonwealth is entitled to recover from defendant a tax at the rate of five mills on the dollar, of the actual value of its capital stock, as follows, viz: For the whole tax year 1894 on 159,153 shares at $50.52 per share; on 39,063 shares at the same rate per share, for the proportion of the tax year remaining on September 13, 1894, when said shares were issued; and on 847 shares for the whole tax year at $6.25 per share; less $4,992,827 invested in shares of other corporations."

12. In its fourth conclusion of law:

"The prothonotary is directed to enter judgment in favor of the commonwealth, and against the defendant for the amount of tax which shall be found due when properly calculated upon the basis stated in the foregoing conclusion, if exceptions be not filed within the time limited by law."

13. In finding and holding to be taxable, a valuation of the shares of defendant's capital stock, instead of a valuation of its tangible property and assets, and its franchises, between the first and fifteenth days of November, 1894.

14. In directing judgment to be entered in favor of the commonwealth and against defendant.

15. In not directing judgment to be entered in favor of defendant.

SIMONTON, P. J., filed the following opinion on exceptions.

Exception 1: We have included in the sixth finding of fact all the certificate made by agreement of the parties which we consider pertinent. The whole certificate is in the record, and this exception is sustained to the extent that we hereby refer to said certificate and make it a part of our sixth finding.

Exception 2: This exception is overruled. The new shares were not sold on the market, but were taken by the then shareholders at par of the amount paid in, the market price being at that time much above par. It is true that the defendant's treasurer stated in his affidavit: "The new shares issued by the company were not subscribed for, but were sold outright by the company at $25.00 per share, that being the par value of the amount paid in." But he also said: "The holders of the

existing 160,000 shares were permitted to acquire the new
shares in the proportion of one share of new stock to every four
shares of old stock."

The fair inference from these statements is that which we
have drawn, namely, that the shares were allotted to the stock-
holders in proportion to their holdings at par of the amount
paid in. When proof of facts is tendered in the form of an
affidavit, we cannot be bound to accept the affiant's inferences
involved either in the language or in the form of the affidavit,
but must be at liberty to draw such inferences as the facts seem
to us to warrant.

Exception 3: This exception is overruled. Much of the
matter quoted in this exception is opinion and inference, and all
of it is irrelevant, as the average selling price of the shares was
conclusive evidence of the actual value of the capital stock.

The court dismissed the other exceptions.

*Errors assigned* were (1–15) in overruling exceptions, quot-
ing them.

*M. E. Olmsted,* for appellant.—The act of March 30, 1811,
which affords the only statutory authority for the settlement of
accounts by the auditor general and state treasurer, requires
that they are to be settled according to law and equity: Com.
v. Lehigh Valley R. R. Co., 3 Luz. Leg. Obs. 147.

The practice of apportionment has uniformly been sustained
and enforced by the courts, both for and against the common-
wealth: Com. v. Atlantic Refining Co., 2 Pa. C. C. R. 62; Com.
v. Standard Oil Co., 101 Pa. 119; Com. v. Penna. Coal Co.,
41 Leg. Int. 125; Com. v. Western Union Telegraph Co., 15
W. N. C. 331; Pullman's Palace Car Co. v. Com., 107 Pa. 156;
Drexel v. Com., 46 Pa. 31; Com. v. Canal Co., 50 Pa. 410;
Com. v. American Machine Co., 2 Ches. Co. Rep. 186.

*John P. Elkin,* deputy attorney general, with him *Henry C.
McCormick,* attorney general, for appellee.

PER CURIAM, January 3, 1898:

Defendant company's appeal to the court below from the
account settled by the auditor general and state treasurer for

tax on capital stock for the year ending the first Monday of November, 1894, was tried by said court without a jury under the provisions of the act of April 22, 1874; and, on the facts there found, final judgment was entered in favor of the commonwealth. From that judgment the defendant appealed to this Court, and assigned fifteen errors, some of which relate to findings of fact and others to conclusions of law. The learned court's findings of fact, conclusions of law and rulings on defendant's exceptions—of which the judgment is predicated—are fully set forth in the record, and need not be recited here. Our consideration of these and other portions of the record, in connection with the specifications of error, has satisfied us that the judgment should not be reversed or modified. We find no error in any of the findings of fact, or in the legal conclusions drawn therefrom by the learned president of the common pleas; nor do we think that any of the questions presented by the record require further notice than has been taken of them by him. We therefore affirm the judgment on his findings of fact and conclusions drawn therefrom, as set forth in his opinion, etc., sent up with the record.

Judgment affirmed.