Stenton Gardens, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

Argued December 5, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*A. Victor Meitner, Jr.,* with him *Lloyd A. Good, Jr.,* and *Randal J. McDowell,* for appellant.

*M. David Smeltz,* Deputy Attorney General, with him *Edward T. Baker,* Deputy Attorney General, for appellee.

OPINION BY JUDGE ROGERS, February 4, 1974:

Stenton Gardens, Inc. (Stenton) has appealed from decisions of the Board of Finance and Revenue (Board), upholding determinations of the Department of Revenue of Stenton's capital stock tax liability for the periods ending June 30, 1970 and December 16, 1970. The parties have entered into a stipulation of facts, upon the basis of which we make the following

FINDINGS OF FACT

1. Stenton was incorporated in Pennsylvania on August 28, 1942, with an authorized capital stock of 640 shares, par value $50.00 per share. The stated purpose was to "purchase or otherwise acquire, hold, lay out, develop, manage, sell, exchange, mortgage, pledge, lease and otherwise deal in real property. . . ."

2. From the date of its incorporation until the death of Carl Metz on January 15, 1963, Stenton was owned, controlled, and operated by Carl Metz as a building corporation. Carl Metz owned directly or through nominees 560 shares, and his wife, Helen C. Metz, owned 80 shares.

3. On January 15, 1963, Stenton was actively engaged in the erection in Roxborough, Pennsylvania, of a group of duplex homes and row houses, owned certain real estate in New Jersey, owned a gas station in Cheltenham, Pennsylvania, and held other real estate.

4. The principal activity of Stenton after the death of Carl Metz was the completion of the duplex units and row homes in Roxborough, Pennsylvania.

5. After the completion of the Roxborough dwellings, Stenton was no longer active in the building business, but acted solely as a real estate holding company through the executors of the estate of Carl Metz, deceased. The executors through Carmet Realty, a real estate brokerage firm, collected the net rents from the Roxborough homes and gas station. The duplex homes and row houses were managed by Carmet Realty.

6. At a special meeting of the shareholders of Stenton on December 17, 1969, the executors and Helen C. Metz adopted a complete plan of liquidation and dissolution.

7. For the year ending June 30, 1969, Stenton in reporting its capital stock tax submitted a valuation of $60,000 and a taxable value of its capital stock of $58,248, which valuation was approved by the taxing authorities on January 16, 1970. Thereafter, within the time permitted by law, the tax authorities on February 5 & 16, 1971, resettled Stenton's capital stock tax for the year ended June 30, 1969, pursuant to Section 1105 of the Fiscal Code, placing a valuation of $200,000 on Stenton's capital stock and a taxable value of $194,-

158.00. This resettled valuation was accepted by Stenton for the year ended June 30, 1969.

8. At the time the taxing authorities resettled Stenton's capital stock tax for the year ended June 30, 1969, said authorities had notice of the liquidation of Stenton and the fact that substantial sums had been paid to its stockholders.

9. Stenton, in reporting its capital stock tax for year ended June 30, 1970 submitted a valuation of $130,000 and tax due of $910.00. On February 5 & 16, 1971 the taxing authorities settled a value of capital stock at $200,000 with a tax due of $1400. Thereafter, on June 24 & 25, 1971 and in the time permitted by law, the taxing authorities resettled Stenton's capital stock tax for year ended June 30, 1970 pursuant to Section 1105 of the Fiscal Code placing a valuation of $700,000 on Stenton's capital stock and tax due of $4900.

10. From December 17, 1969, until December 16, 1970, the only activity of Stenton was the sale of all its duplexes, row houses, and gas station to the public in an effort to completely wind up the affairs of Stenton. During this period, Stenton sold its gas station and row houses and periodically made distributions in liquidation to its stockholders in cash and in kind.

11. For the year ended June 30, 1970, Stenton reported a book net worth or book equity of $7305. The taxing authorities revised Stenton's book net worth or book equity for the year ended June 30, 1970 to $755,381. This revision was based upon the book equity reported plus including gain from sale of assets in subsequent short period and excess of market value of property distributed in kind over book value. The computations by the taxing authorities utilized in the revision of book equity are as follows:

## Liquidating distributions made during the year

| | | | | |
|---|---|---|---|---|
| 3/12/69 | 17,000 x 165/365 = | 7,685 | | |
| 3/30/69 | 31,000 x 183/365 = | 15,542 | | |
| 4/20/69 | 32,000 x 293/365 = | 25,688 | | |
| 5/11/69 | 32,000 x 314/365 = | 27,529 | | |
| 5/26/69 | 40,000 x 329/365 = | 36,055 | | |
| 6/25/69 | 103,000 x 360/365 = | 101,589 | $214,083 | |

| | |
|---|---|
| Plus book equity | 7,305 |
| Plus gain from sale in subsequent year | 370,752 |
| Plus excess of market value over book value of property distributed in kind in subsequent year | 163,241* |

| | | |
|---|---|---|
| | TOTAL | $755,381 |

\* 189,000 Distribution in kind
(25,759) less book value
_____
163,241

12. For the short period July 1, 1970 to December 16, 1970, when Stenton terminated its existence, it reported a value of capital stock of $150,000 and tax due of $481.25. The taxing authorities settled for the value of capital stock at $379,000 and tax due of $1,228.37.

13. For the short period ended December 16, 1970, the taxing authorities revised the reported book net worth or book equity of Stenton from "None" to $379,000. This revision was based upon the distribution to the trustees made during the period in question as follows:

| | | |
|---|---|---|
| 10/ 8/70 | 100/169 x 49,248 = | 29,141 |
| 10/22/70 | 114/169 x 49,259 = | 33,228 |
| 11/ 7/70 | 140/169 x 100,000 = | 92,850 |
| 11/20/70 | 143/169 x 40,000 = | 33,846 |
| 12/ 7/70 | 160/169 x 1,320 = | 1,259 |
| 12/ 7/70 | 160/169 x 100,000 = | 99,990 |
| 12/10/70 | 168/169 x 180,365 = | 179,298 |
| 12/16/70 | 169/169 x 10,000 = | 10,000 |

| | |
|---|---|
| TOTAL | $479,612 |

14. In arriving at the valuation of the capital stock for corporations making final distribution, it is the policy of the taxing departments to base the valuation on the value of the assets distributed. Where distributions are made during various times during the period, each distribution is apportioned for the time it was held by the corporation.

15. Stenton elected to liquidate within 12 months under the authority of Section 337 of the Internal Revenue Code. Under this section, the corporation was relieved from liability to pay capital gains taxes on the sale of its assets. The obligation to pay capital gains taxes was placed directly upon the stockholders and was based on the difference between the amount received in liquidation and the cost of the stock. The capital gains taxes paid by the stockholders were as follows:

| | |
|---|---:|
| Helen C. Metz—1970 | $102,276.86 |
| Trustees under the Will of Carl Metz—1970 | 7,088.41 |
| Trustees under the Will of Carl Metz—1971 | 8,221.61 |
| Total Capital Gain Taxes | $121,586.90 |

16. Final distribution was made on December 16, 1970, and the total amount distributed to Stenton's stockholders in liquidating was $785,192.00. Stenton's existence ceased at that time.

## DISCUSSION

Stenton poses two questions for our consideration. The first is: "Does the Capital Stocks Tax Act allow inclusion of assets owned by a corporation during its entire fiscal year, but not owned at the end thereof, when such assets were sold during the fiscal year in accordance with a plan of complete liquidation and dissolution under the Internal Revenue Code Section 337,

[?]" Stenton urges that this question should be answered in the negative because Section 20 of the Act of June 1, 1889, P. L. 420, 72 P.S. §1901 requires appraisal by the taxpayer of its capital stock "at its actual value in cash as it existed at the close of the year for which the report is made." It contends that the capital stock is a "spot tax" upon the value of its shares on the filing date. Almost 100 years of authority is to the contrary. The capital stock tax is an annual tax on the capital of the corporation and not a "spot tax" on the stock itself. *Commonwealth v. Sunbury Converting Works,* 286 Pa. 545, 134 A. 438 (1926). The tax attaches to all of the capital employed by the taxpayer during "the year for which the report is made." Hence, assets owned at the close of the year but acquired during the year may not be included by the taxing authorities at full value but must be given values based upon an apportionment according to the period owned. *Commonwealth v. Gulf Oil Corporation,* 359 Pa. 583, 60 A. 2d 46 (1948); *Commonwealth v. Peoples Traction Co.,* 183 Pa. 405, 39 A. 42 (1898); *Commonwealth v. American Machine Co.,* 2 Dauphin 27 (1899). The principles applicable have been explained as: "The tax is levied on an annual basis so that a corporation which for one reason or another is not in existence for the full tax year is liable only for the proportion of the year in which the corporation exercises its corporate powers. Another aspect of this rule is the requirement that the Commonwealth will recognize substantial changes during a taxable year in the amount of corporate assets or liabilities so as to impose a tax representative of the value of the capital stock over the year." D. Rosenbluth, Pennsylvania Business Taxes, Joint Committee on Continuing Legal Education of the American Law Institute and the American Bar Association (1959), p. 18; and as particularly related to the instant facts:

"If liquidation of the shares of capital stock has taken place, the conclusion is irresistable that the value of the shares was the amount of cash or property actually received by the shareholder from the corporation. . . .

. . . .

"If payments in partial liquidation have been made to stockholders during the tax year, but final distribution has not yet been completed, the Department in computing the tax will add to the taxable value as of the end of the period an amount equivalent to the payments so made apportioned for the length of time outstanding during the period." L. P. Stradley and I. H. Krekstein, Corporate Taxation and Procedure in Pennsylvania, Second Ed. (1952), pp. 138, 139. The stipulation reveals that the Department valued Stenton's capital in accordance with this long and firmly established law and practice. Stenton's brief, if we understand it, objects to the Department's assigning as the value of assets held in the year ending June 30, 1970, the prices obtained for the same assets in the following year. This was clearly proper. *The Philadelphia Eagles, Inc. v. Department of Revenue*, 4 Pa. Commonwealth Ct. 318 (1972).

Stenton's second question is: "Must the Commonwealth reduce the value assigned to appellant's capital stock by the amount of Federal income capital gains taxes paid by stockholders on distributions of all its assets?" Stenton cites no authority for its contention that the valuation of its capital for purposes of the Pennsylvania Capital Stock Tax should be reduced by the amount of Federal Income Tax its stockholders were required to pay on the gains they realized in the liquidation. For reasons which seem obvious, it is wholly without merit.

## ORDER

AND NOW, this 4th day of February, 1974, the appeals of Stenton Gardens, Inc. are dismissed and the settlements made in these cases are approved; unless exceptions are filed within thirty (30) days of the filing of this Order the Cheif Clerk is directed to enter judgments in favor of the Commonwealth and against Stenton Gardens, Inc., as follows:

To 318 C.D. 1972 in the amount of $3508.65;* and
To 999 C.D. 1972 in the amount of $1228.37.

---

\* By order dated April 29, 1974, this amount was increased to $4,900.00.